■ Michael N. G., Appellant, v Elsa R., Respondent.—Order, Family Court, New York County (Leah Marks, J.), entered on or about March 11, 1991 which, *inter alia,* modified its prior orders providing for visitation with petitioner and permitted respondent, subject to restrictions, to take the parties' son on extended trips out of the jurisdiction, unanimously modified, on the law, the facts and in the exercise of discretion, to provide in the second paragraph of Section III that, absent an agreement between the parties, the court shall determine whether the child may accompany respondent on any proposed trip of more than three months duration, and otherwise affirmed. Order of the same court entered on or about February 8, 1991, which reserved disposition on the matter of payment of counsel fees, unanimously affirmed, without costs.

Petitioner and respondent are the parents of one son, who presently resides with his mother in New York City. Petitioner and respondent have never been married. In August 1989, pursuant to a petition brought by the father, the Family Court issued a visitation order, which was modified in July 1990 to include an extended summer visit between the father and son. On September 11, 1990, petitioner filed the within petition seeking further modification to allow more frequent visits with his son. On November 15, 1990, the respondent filed a petition to allow her "to remove Child from the State of New York during periods she is working outside of the State and to modify petitioner's visitation during such times." Although her request was made in general terms, in the petition, respondent made specific reference to a planned business trip to Germany.

At the hearing, expert testimony established that the child, who was, at the time, seven years old, is somewhat emotionally fragile and in need of therapy, and that it would be preferable if such therapy, once begun, were not interrupted. Additionally, expert testimony established that it would be to the child's benefit that there be no interruption in his current relationship with either of his parents and no interruption in his schooling and homelife. While the Law Guardian emphasized the need for the child to maintain a relationship with the father and the potential harm that could ensue if that relationship were interrupted for a lengthy period, there was psychiatric testimony indicating that although the child would suffer in the event of a lengthy interruption in his relationship with either of his parents, since the child's mother, as his custodial parent from birth, plays the primary role in his life,

maintenance of that relationship is of greater significance, and the court so found.

Respondent, an established filmmaker and writer, testified that she was planning to go to Germany in order to accept a $10,000 grant by a German arts agency which required her presence in Berlin for a period of up to five months and which, were she to accept it, might lead to substantially greater opportunities. She also testified that her work required frequent travel, occasionally for extended periods of time. The mother provides the major portion of the child's support while the father has been resistant to any increase in his modest support obligation.

Although initially the father was unclear as to his plans were he to be awarded temporary custody during the mother's proposed business trip, he later stated that he wished to have the child come to live with him in his home in Chatham, New York and attend the public school there. The mother, in turn, testified to her provisions for the child's education while in Berlin at a school with a substantial American student population and also testified that she had discussed the transition with the child's school in New York. While, according to the father, he did not have the opportunity, in light of the mother's indefinite departure date, to formulate a plan to provide for continuity in the child's present schooling and potential therapy, he indicated that it might be possible to bring the child to New York City on Saturdays and holidays to attend an as yet to be scheduled therapy session and maintain contact with his regular school.

We note that, apparently because of his overwhelming concern over the hostility between his parents and possibly because of some degree of manipulation by one or both parents, the child's own wishes remained unclear. In spite of this, we note our approval of the Family Court's decision not to interview the child personally, based on the opinion of a psychiatrist who had interviewed the child and who opined that it would not be beneficial to the child to be subjected to additional interviews by strangers regarding what was, for the child, a very painful matter.

The Family Court held that visitation with petitioner would be increased to lengthen his weekend visits, which would take place every other weekend, and to provide for increased holiday and vacation visits, including four weeks every summer. As to respondent's petition, the court ordered that, if she leaves the jurisdiction for business reasons for less than six weeks, petitioner may live with and care for the child in New

York City. This provision is not contested on this appeal. The court further provided that, if respondent's out of the jurisdiction business trip is of more than six weeks duration, she may take the child, but petitioner would be entitled to exercise his regular rights to visitation with the child in such location. In that event, petitioner would bear the costs of visitation, including travel expenses, unless the trip were to a place over 500 miles from New York City, in which case the parties would split the travel expenses of permitted visitation. In addition, petitioner would have the right to care for the child during school vacations lasting more than three days and for the entire summer.

Upon a review of the record, we find that petitioner was afforded a full and fair hearing. Moreover, we find that the general provisions for non-travel related visitation were carefully and thoughtfully crafted to be in the best interest of the child.

However, while we recognize the burden that may be imposed upon the trial court because of the obvious hostility that exists between the parents here, it is precisely because of that hostility and its potential for harm to the child that we find that the blanket provision which governs when the mother's business travel will extend for more than six weeks is overly broad and must be modified since it permits the mother to take the child out of the jurisdiction for extended periods without limitation. While even a period of three months would constitute a significant period of separation from a parent, it is clear that any period beyond that should require court approval in the event the parties themselves cannot reach an appropriate compromise that subordinates their own hostilities and interests in order to serve the best interests of their son and his emotional needs vis-à-vis both of them. Since the prospect of repeated litigation between the parties is, in and of itself, detrimental to the child, it behooves the parties to make a concerted effort to work out any necessary compromises in this regard in view of the negative impact of extended conflict on this child.

In seeking to fashion a pragmatic *modus operandi* under the peculiar, and extremely difficult, circumstances here prevailing, the Family Court properly recognized that it was not dealing with a situation where the custodial parent wishes to remove the child from the State without a plan to return, which would ordinarily require that the relocation be justified by exceptional circumstances or pressing concerns before it will be found to be in the child's best interest *(Weiss v Weiss,*

52 NY2d 170; *Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938). Here, since there is no issue of a permanent separation from the non-custodial parent nor a potential permanent change in custody, no exceptional circumstances need be found in order to permit the custodial parent to temporarily take the child out of the jurisdiction. However, this does not mean that the custodial parent, in light of the situation here prevailing, should not be required to make some showing before being permitted to take the child out of this jurisdiction to a location that is at a substantial physical distance from the other parent, for a period exceeding three months.

Of course, before reaching the issue of whether the custodial parent may take the child on such an extended trip, there must be a showing by the non-custodial parent that he is willing and able to take custody of, and care for, the child during the period involved and the particulars of such plan of care. If the non-custodial parent cannot show a legitimate alternative plan for the child's care, the custodial parent must be permitted to take the child with her since to hold otherwise would allow the non-custodial parent the power to hold the custodial parent hostage, and interfere with her legitimate professional activities, without imposing any concomitant responsibility.

Once the non-custodial parent has demonstrated a plan for the child's care during the subject period, the court must weigh, among other factors, which parent's plan for the child's care during the proposed trip would better serve the child's interests, the significance of the child's need for continuity in schooling, friendships and other activities, including medical treatment and/or therapy, and whether either parent's plan provides for such continuity, and any other facts which, in the particular instance, may have an effect on the child's welfare, including, as the child matures, his own wishes. In addition, the court should determine whether visitation can be maintained by the non-custodial parent despite the trip, particularly since provision is made for the custodial parent to bear 50% of the cost of the other parent's travel when the location is more than 500 miles from the child's regular home. Consideration should also be given to the potential economic and professional ramifications of the proposed trip upon the custodial parent, who bears the primary responsibility for meeting the child's economic needs. All of these factors, of course, must be weighed and balanced in the context of the child's best interests.

Since we are modifying the order insofar as it deals gener-

ally with travel of over three months, we recognize that this leaves the parties without a decision as to the specific trip to Germany which was the catalyst for the hearing. We note that a stay of the Family Court's order, issued in March, 1991, was never sought by the appellant, nor was there any attempt to expedite the appellate process. Nevertheless, there is nothing in the record before us to indicate that the trip has already taken place or that the issue is moot.

Under these circumstances, we find that if such a trip is still contemplated respondent may renew her application with respect to this particular trip in the Family Court and that court shall make a determination thereon in accordance with the aforenoted guidelines.

We have examined petitioner's remaining contentions and find that they are without merit. Concur—Milonas, J. P., Ellerin, Kupferman, Ross and Smith, JJ.